OPINION
{¶ 1} Defendant-Appellant Deandre Moore appeals his conviction for felonious assault. For the following reasons we affirm the judgment of the trial court.
 {¶ 2} On November 2, 2002 an argument took place between Moore and Patricia Grigsby inside an apartment at the Dugger Road Apartments. Grigsby saw her cousin, Charles Sumlin outside. Grigsby left the apartment, but Moore followed her. Sumlin heard the two continuing to argue, so he asked what was going on. Rather than respond to the question, Moore chose to taunt Sumlin, calling him a punk and bragging about his own "skills." Sumlin rose to the bait and said, ". . . hit me then." Moore threw a bottle at Sumlin and tried to punch him, but missed. Moore and Sumlin began to swing at each other, and Sumlin fell to the ground. Moore proceeded to repeatedly kick Sumlin in the face while continuing to brag about his "skills."
 {¶ 3} In his own defense, Moore claimed that Grigsby told Sumlin to get Moore and that Sumlin reached into his jacket pocket as he asked what was going on. Moore insisted that Sumlin was "jumping around like he had a weapon" and that Sumlin attacked him. Moore hit Sumlin, who fell to the ground and grabbed Moore's legs. Moore admitted kicking Sumlin in the face once or twice, stating that he only did what he had to do to get Sumlin off of him. Moore claimed to have been afraid of the man that he had been taunting.
 {¶ 4} Moore also offered the testimony of a supposed eyewitness, James Leigh, who also testified that Sumlin was wearing a jacket and that he attacked Moore. However, Leigh left the scene before police arrived, and he never gave a statement to the police.
 {¶ 5} Following the fight, Sumlin was dragged into an apartment, and the police were called. Grigsby fled because she was not supposed to be on the premises. Officer David Blackburn arrived and saw Sumlin's injuries. He noted that Sumlin was not wearing a jacket, and no weapons were found either in Sumlin's possession or at the scene of the fight. Grigsby also testified that Sumlin was not wearing a jacket and that he was unarmed.
 {¶ 6} Sumlin sustained severe injuries as a result of the fight. Several bones in Sumlin's face were broken; his ankle was broken; he had to have his left eye surgically removed; and he sustained severe damage to his right eye. Sumlin's memory was impaired, and he had no recollection of the fight.
 {¶ 7} Officer Christen Beane arrested Moore on January 9, 2003. Moore voluntarily admitted that he fought with Sumlin and that he kicked Sumlin in the face after he fell. Although Moore alleged that Sumlin first came after him, he made no mention of Sumlin wearing a jacket or any fear of weapons. The following day, Moore expanded on his story to include these details, but he refused to give a written statement.
 {¶ 8} Moore was indicted for one count of felonious assault on February 4, 2003. Following a jury trial, Moore was found guilty as charged. The trial court sentenced Moore to four years imprisonment. Moore filed a timely notice of appeal.
 {¶ 9} Moore's second assignment of error:
 {¶ 10} "It was plain error for the trial court to, sua sponte, fail to give an instruction for aggravated assault."
 {¶ 11} In his second assignment of error, Moore argues that the trial court should have sua sponte given the jury an instruction for aggravated assault and that the court's failure to do so rose to the level of plain error. We disagree.
 {¶ 12} Failure to raise objections to a trial court's jury instructions waives all but plain error. Crim.R. 30(A). See, e.g., Statev. Stallings, 89 Ohio St.3d 280, 292, 2000-Ohio-164, citations omitted. Here Moore conceded that trial counsel made no such objection, and in fact, that failure is the basis of his first assignment of error discussed below. Accordingly, Moore has waived all but plain error. In order for him to prevail under a plain error standard, the record must demonstrate that the outcome of his trial would clearly have been otherwise but for the error he alleges. State v. Long (1978),53 Ohio St.2d 91, 372 N.E.2d 804. Plain error should only be found under exceptional circumstances in order to prevent a miscarriage of justice. Id.
 {¶ 13} A trial court must give an instruction on aggravated assault only when there is sufficient evidence of serious provocation by the victim. State v. Deem (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph four of the syllabus. On the other hand then, if there is insufficient evidence of serious provocation, no aggravated assault instruction is warranted. Id.
 {¶ 14} To be serious, the provocation "must be reasonably sufficient to incite or arouse the defendant into using deadly force." Deem, supra, at paragraph five of the syllabus, citation omitted. In the context of aggravated assault, the evaluation of whether provocation is reasonably sufficient to constitute serious provocation is a two-part analysis.State v. Mack, 82 Ohio St.3d 198, 201, 1998-Ohio-375. First, an objective standard must be applied to determine whether the provocation is sufficient to "arouse the passions of an ordinary person beyond the power of his or her control," and to bring on a sudden passion or fit of rage. Id., citing State v. Shane (1992), 63 Ohio St.3d 630, 634-35,590 N.E.2d 272. If the objective standard is satisfied, then a subjective standard must be applied to determine whether the defendant in a particular case was actually "under the influence of sudden passion or in a sense of sudden rage." Mack, supra, at 201, citing Shane, supra, at 634-35.
 {¶ 15} Here the evidence supports the State's claim that Moore was the one who provoked the fight, not Sumlin. Moore chose to follow Grigsby when she tried to walk away from their argument. Moore then chose to taunt Sumlin before throwing a bottle and a punch at him, which started the physical fight. There was nothing reasonable about Moore's actions or reactions when, during the course of that fight, he repeatedly kicked Sumlin in the face. Moore claimed that he was acting out of fear, but "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." Mack, supra, at 201, citations omitted.
 {¶ 16} In fact, the only evidence of provocation by Sumlin was some vaguely described hand gestures and his response to Moore's taunts that if Moore was so skilled, he should hit Sumlin. This evidence does not even begin to approach the level of serious provocation required to warrant an aggravated assault instruction. Because Sumlin's words and actions would not arouse the passions of an ordinary person beyond his ability to control himself, the first part of the analysis is not met, and we need not consider the second. Accordingly, the trial court did not need to instruct on aggravated assault.
 {¶ 17} Moore's second assignment of error is without merit and is overruled.
 {¶ 18} Moore's third assignment of error:
 {¶ 19} "Improper prosecutorial statements during closing argument including police testimony and the weight to be given same served to deny appellant due process."
 {¶ 20} In his third assignment of error, Moore claims that he was denied a fair trial due to the cumulative effect of improper comments made by the prosecutor during her closing argument. Specifically, Moore insists that the prosecutor improperly established a pattern of appealing to the feelings and emotions of the jury. However, when each of the prosecutor's isolated comments are considered in the context of the entire closing argument, we find no misconduct.
 I {¶ 21} We initially note that failure to object to allegedly improper statements made by the prosecutor during closing argument waives all but plain error. State v. Green, 90 Ohio St.3d 352, 373, 2000-Ohio-182, citation omitted. A review of the record reveals that Moore failed to object to any of the comments about which he now complains. Nevertheless, none of the prosecutor's comments, whether taken together or separately, rise to the level of plain error.
 {¶ 22} In considering claims of prosecutorial misconduct, an appellate court must determine whether the prosecutor's conduct at trial was improper, and, if so, whether the conduct affected any of the defendant's substantial rights. State v. Lott (1990), 51 Ohio St.3d 160, 165,555 N.E.2d 293, citations omitted. The analysis centers on the fairness of the trial, not on the culpability of the prosecutor. Green, supra, at 373.
 {¶ 23} Generally, prosecutors are entitled to considerable latitude in closing argument. Sate v. Ballew, 76 Ohio St.3d 244, 255, 1996-Ohio-81. Additionally, the prosecutor's closing argument must be viewed in its entirety to determine whether the defendant has been prejudiced. Id. See, also, State v. Hill (1996), 75 Ohio St.3d 195, 204, 661 N.E.2d 1068, citation omitted. Isolated comments may not be taken out of context and given their most damaging interpretation. Hill, supra, at 204, citingDonnelly v. DeChristoforo (1974), 416 U.S. 637, 647, 94 S.Ct. 1868.
 II {¶ 24} Moore claims that the prosecutor vouched for the credibility of Patricia Grigsby by stating, "You must believe her. You've got to believe her." However, these comments cannot be considered in a vacuum.
 {¶ 25} During the trial Moore strongly attacked Grigsby's credibility. The State responded by stating that "Charles can't sit up there and tell you what really happened. He has amnesia; but Patricia told you what really happened, and Blackburn told you what physical, tangible evidence existed at that scene. The defendant is banking on you not believing Patricia because she's possessed drugs before. * * * The defendant's banking on you not believing her. You know what? She's in the same category with Officer Blackburn. What does she have to gain by lying in here? She's already been in and out of prison at least once. Why would she come in here and make this whole thing up? She doesn't want to be here. She didn't want this to happen. She knew she was gonna get scorched for being a convicted felon. The defendant's banking on you not believing [her] because [s]he has a drug conviction. You must believe her. You've got to believe her. Common sense and reason tells you this gal didn't come down here and lie to you. What could she possibly gain from this? What good is it gonna do Patricia Grigsby if Deandre Moore gets convicted for felonious assault?"
 {¶ 26} Thus, when viewed in its proper context, it appears that the prosecutor was arguing that Grigsby was a reliable witness and that she lacked a motive to lie. A prosecutor is permitted to argue facts that support a witness' credibility when that credibility has been attacked.Green, supra, at 373-74.
 III {¶ 27} Similarly, Moore argues that the prosecutor vouched for the credibility of Officer Blackburn when she stated, "Why would Officer Blackburn lie to you? Do you know what happens to cops who lie under oath?" Once, again, these comments must be considered in the context in which they were made.
 {¶ 28} Blackburn and Grigsby testified that Sumlin was not wearing a coat, in conflict with testimony offered by Moore. In closing argument the prosecutor first pointed out the differences in testimony and then argued that Blackburn was an unbiased reliable officer who had responded to the scene as a result of a 911 call. A prosecutor is free to argue that certain evidence tends to make a particular witness more credible.State v. Carpenter (1996), 116 Ohio App.3d 615, 624, 688 N.E.2d 1090, citations omitted. Accordingly, when considered in context, we find no fault with the prosecutor's statements.
 IV {¶ 29} Moore next alleges that the prosecutor violated his rights by implying that the jury should speculate about testimony from Sumlin and Grigsby which was excluded, when she stated, "The statements of the Defendant you have been hearing about for a day and a half, the statements of Patricia Grigsby and Charles, you were not allowed to hear. I sensed a tangible frustration from you when the Defendant was not allowed to tell you what Charles said. . . ." Yet again, we point out that the comment must be taken in context. Here the prosecutor continued on to explain to the jury that Ohio's rules of evidence only allow a witness to repeat statements made in very limited circumstances, such as statements made by the defendant. This is an accurate statement of the law, which served to explain why the jurors were allowed to hear Moore's statements, but not those of Sumlin or Grigsby. Her explanation was not improper.
 V {¶ 30} Moore next insists that the prosecutor made an inflammatory appeal to the jury by arguing that Moore broke the rules of self defense and giving emotionally charged examples of what would constitute self defense. A complete reading of the closing argument reveals that the prosecutor was merely illustrating the elements of self-defense. It appears that the prosecutor was addressing the possible misconception in the minds of the jurors that a prosecutor would never find self defense appropriate. In fact, the prosecutor went on to remind the jury that the court would instruct on the defense, and she applied the facts of this case to the elements of self defense. These statements fall within the wide latitude afforded to the State in closing argument.
 VI {¶ 31} Finally, Moore claims that the prosecutor played to the jury's emotions and encouraged the jury to "embark on a mission of vengeance" by insisting that the jury "do the right thing." When read in context, however, it is clear that the prosecutor's comments were properly made in reference to the inherent difficulty for jurors trying to understand the legalese that defines the elements of self defense. The implication was that following the law as instructed by the judge would be doing the right thing.
 VII {¶ 32} Because none of the prosecutor's statements when considered in their proper context rise to the level of plain error, Moore's third assignment of error is overruled.
 {¶ 33} Moore's first assignment of error:
 {¶ 34} "Appellant was denied effective assistance of counsel when his trial counsel failed to request a jury instruction for aggravated assault despite extensive evidence of provocation by the victim."
 {¶ 35} Moore's fourth assignment of error:
 {¶ 36} "Appellant was denied effective assistance of trial counsel by a series of failings which denied him due process of law."
 {¶ 37} In his first and fourth assignments of error, Moore claims that he was denied the effective assistance of counsel. In support he offers several reasons, none of which we believe rise to the level of ineffective assistance of counsel.
 I {¶ 38} In order to prevail on a claim of ineffective assistance of counsel, the defendant must show both deficient performance and resulting prejudice. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. To show deficiency, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of effective assistance. Id. The adequacy of counsel's performance must be viewed in light of all of the circumstances surrounding the trial court proceedings. Id. Furthermore, hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time. State v. Cook (1992), 65 Ohio St.3d 516, 524,605 N.E.2d 70.
 {¶ 39} Even assuming that counsel's performance was ineffective, the defendant must still show that the error had an effect on the judgment.State v. Bradley (1989), 42 Ohio St.3d 136, 142, 538 N.E.2d 373. Reversal is warranted only where the defendant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id.
 II {¶ 40} Moore first claims that trial counsel was ineffective for failing to request a jury instruction on aggravated assault. On review this Court must consider not whether trial counsel pursued every possible defense, but whether he chose an objectively reasonable defense.Strickland, supra, at 688. In a case such as this, where there is conflicting testimony, it is not unreasonable for counsel to hope for an acquittal rather than for a guilty finding on a lesser charge. See, e.g., State v. Catlin (1990), 56 Ohio App.3d 75, 78-79, 564 N.E.2d 750, citing State v. Clayton (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189.
 {¶ 41} On the other hand, counsel also could have reasonably hoped that the jury would believe Moore's testimony that he was acting in self-defense. Surely, trial counsel was well aware that "[i]t is difficult to persuade a jury with inconsistent theories of defense."Catlin, supra, at 79. The fact that Moore now feels that there was another, possibly better defense strategy available does not mean that trial counsel breached his essential duty by not presenting that alternative defense. See, e.g., Clayton, supra, at 49; State v. Brown
(1988), 38 Ohio St.3d 305, 319, 528 N.E.2d 523, citation omitted.
 {¶ 42} Furthermore, as discussed above, there was not sufficient evidence of serious provocation to warrant an instruction for aggravated assault. Accordingly, we cannot say that counsel was ineffective for failing to ask for such an instruction.
 III {¶ 43} Moore also claims that trial counsel was ineffective for failing to object to various statements made by the prosecutor during her closing argument. However, as discussed above, the prosecutor's closing argument, when taken as a whole, was proper. Therefore, we cannot say that counsel was ineffective for electing not to object.
 IV {¶ 44} Moore next alleges that counsel was ineffective for failing to object to leading questions that the prosecutor asked of Patricia Grigsby. A trial court has the broad discretion to allow an attorney to ask leading questions of his own witness. State v. Miller (1988),44 Ohio App.3d 42, 45, 541 N.E.2d 105. It may have been a matter of strategy to choose not to object because if the objection had been sustained, the question would have been rephrased and answered again in the same way, which likely would have served only to further draw the jurors' attention to the testimony. Whatever counsel's reasoning, there is no reasonable likelihood that the outcome of Moore's trial would have been different if counsel had objected to a couple of leading questions. Therefore, we cannot say that counsel was ineffective for not objecting.
 V {¶ 45} Finally, Moore insists that trial counsel should have asked for a mistrial after witness Loretta Robinson volunteered the information that Moore sells drugs. Trial counsel did object to this testimony, and the trial court both sustained the objection and instructed the jurors to disregard it. Jurors are presumed to follow the court's instructions.State v. Raglin, 83 Ohio St.3d 253, 264, 1998-Ohio-110, citing State v.Goff, 82 Ohio St.3d 123, 135, 1998-Ohio-369. Accordingly, it was reasonable for counsel not to request a mistrial in light of the court's curative instruction. Under these circumstances, we cannot say that trial counsel was ineffective for electing not to seek a mistrial as a result of this single, unsolicited statement.
 VI {¶ 46} "`Counsel need not raise meritless issues or even all arguably meritorious issues.`" State v. Jones, 91 Ohio St.3d 335, 354,2001-Ohio-57, citing State v. Taylor, 78 Ohio St.3d 15, 31,1997-Ohio-243. We find no fault with trial counsel's representation of Moore. Accordingly, his first and fourth assignments of error are overruled.
 {¶ 47} Moore's fifth assignment of error:
 {¶ 48} "The trial court committed prejudicial [error] by entering a finding of guilty which finding was against the manifest weight of the evidence."
 {¶ 49} Finally, Moore alleges that his conviction was against the manifest weight of the evidence. Once again, we disagree.
 {¶ 50} When reviewing a judgment under a manifest weight standard of review "`[t]he court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction.'" State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Therefore, "`judgments supported by competent, credible evidence going to all material elements of the case must not be reversed as being against the manifest weight of the evidence.'" State v. Morgan, Montgomery App. No. 19033, 2002-Ohio-3567, ¶ 7, quoting Cent. Motorist v. Pepper Pike
(1995), 73 Ohio St.3d 581, 584, 653 N.E.2d 639.
 {¶ 51} In this case Moore was convicted of felonious assault in violation of R.C. § 2903.11(A)(1), which provides that no person shall knowingly cause serious physical harm to another. Moore concedes that Sumlin suffered serious physical harm, but insists that "it is disputed as to how and why it occurred." Moore's self-defense theory, as well as his argument on appeal that an aggravated assault instruction was warranted, implicitly concede that his actions satisfy the elements of the crime of felonious assault. See, State v. Powell (Sept. 29, 1997), Ross App. No. 96CA2257, citing State v. Poole (1973), 33 Ohio St.2d 18,294 N.E.2d 888 (finding that an affirmative defense is one in which the defendant admits the elements of the crime but seeks to prove some additional fact or facts that absolves the defendant of guilt). See, also, Deem, 40 Ohio St.3d 205, at paragraph four of the syllabus.
 {¶ 52} "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [trier of fact] believed the prosecution testimony." Statev. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, citation omitted. After all, the jury was free to believe and credit each witness' testimony as it saw appropriate. State v. Antill (1964), 176 Ohio St. 61,67, 197 N.E.2d 548. Moreover, substantial deference must be extended to the jurors' determinations of credibility, because they actually saw and heard the witnesses. State v. DeHass (1967), 10 Ohio St.2d 230,227 N.E.2d 212.
 {¶ 53} In this case the State offered evidence as to each element of the crime of felonious assault, including evidence of Moore's own statements that he had intentionally kicked Sumlin in the face at least twice. The jury simply chose to believe the State's case rather than Moore's defense. There is no reason to believe that the jury lost its way. Accordingly, Moore's conviction for felonious assault was not against the manifest weight of the evidence, and his fifth assignment of error is overruled.
 {¶ 54} Having overruled all five of Moore's assignments of error, the judgment of the trial court is affirmed.
Brogan, J. and Grady, J., concur.