OPINION
{¶ 1} Defendant-appellant, Ronald L. Shamblin ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas convicting him of one count of breaking and entering, a felony of the fifth degree, in violation of R.C. 2911.13. Appellant was sentenced to serve an 11-month term of incarceration.
 {¶ 2} On December 10, 2004, a little after 3:00 a.m., the Columbus Division of Police received a report of two men breaking into an unattached garage at 74 East Mithoff Street. As Columbus Police Officer Debra Paxton drove down an alley near East Mithoff with the hope of surprising the offenders, she saw an opened garage door with the garage lights on. Officer Paxton observed two individuals inside the garage exit through a door that led into the yard. She aired on the police radio that two people were running southbound. Though unable to get a look at their faces, Officer Paxton observed that one of the individuals was wearing dark clothing, and the other was wearing a yellow shirt.
 {¶ 3} Rather than pursuing the individuals, Officer Paxton returned to a van that had the driver's side door open, and was parked nearby in the alley. Finding no one inside the van, Officer Paxton removed the keys from the ignition. Officer Paxton heard a broadcast report on the police radio that another officer saw individuals running, and apprehended one of the persons exiting the front side of the house. Officer Paxton met up with the other officer, and identified the individual as the one that was in the garage wearing a yellow shirt. Approximately 25 seconds had passed since Officer Paxton had seen the person wearing the yellow shirt fleeing from the garage. A license check was run on the van, establishing the van was registered to appellant. An inventory of the van revealed bolt cutters, a few screw drivers, and some tin snips.
 {¶ 4} Appellant conceded he was in the area, and that his van was parked on the street. Appellant, however, denied he was in the garage that night. According to appellant, on December 10, 2004, he had finished his shift at Jimmy V's Grille and Pub in Columbus, Ohio, at approximately 2:30 a.m. At this time, appellant received a phone call from his friend, Christopher Haycock ("Haycock"), asking appellant to pick him up. Appellant saw Haycock in the area of Nursery Alley, and parked his van in an adjacent driveway. According to appellant, at this time Haycock gave appellant a pair of bolt cutters that Steven Jenkins ("Jenkins"), an alleged co-accomplice in this case, had borrowed from appellant a few days prior. Haycock told appellant that Jenkins was in the vicinity of the alley as well. Thereafter, appellant exited his vehicle and began walking from Nursery Alley to City Park to look for Jenkins. Appellant saw Jenkins approximately five houses away. Appellant then started to return to his van in order to pick-up Jenkins and Haycock, but was stopped by the police and arrested.
 {¶ 5} On December 17, 2004, appellant was indicted by a Franklin County Grand Jury on one count of breaking and entering, a fifth-degree felony, in violation of R.C. 2911.13. Appellant waived his right to a jury trial, and the matter was tried to the bench in the Franklin County Court of Common Pleas on January 5, 2006. The trial court found appellant guilty of breaking and entering as indicted. On February 16, 2006, the trial court sentenced appellant to 11-months imprisonment. Appellant timely filed an appeal to this court.
 {¶ 6} On appeal, appellant brings the following two assignments of error for our review:
Assignment of Error One:
APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
Assignment of Error Two:
THE EVIDENCE AGAINST THE APPELLANT WAS INSUFFICIENT TO SUSTAIN A VERDICT OF GUILTY.
 {¶ 7} For ease of discussion, we will address appellant's assignments of error in the reverse. In his second assignment of error, appellant submits the evidence introduced at trial was insufficient to support his conviction for breaking and entering. We disagree.
 {¶ 8} When considering a challenge to the sufficiency of the evidence, an appellate court must determine whether the evidence is adequate to sustain a verdict. State v. Thompkins (1997),78 Ohio St.3d 380, 386-387. The Supreme Court of Ohio described the role of an appellate court presented with a sufficiency of the evidence argument in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, followed.)
 {¶ 9} Whether the evidence is legally sufficient is a question of law, not fact. Thompkins at 386. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."Jackson v. Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Thomas (1982), 70 Ohio St.2d 79, 80. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. State v. Treesh (2001),90 Ohio St.3d 460, 484; Jenks, supra.
 {¶ 10} Appellant does not challenge that a breaking and entering occurred in the unattached garage at 74 East Mithoff Street, or that he was in that area at 3 a.m., walking around when the police were summoned to that address. Rather, appellant submits the evidence was insufficient to prove his involvement in the crime.
 {¶ 11} Appellant posits that the only testimony tying him to the breaking and entering at Mithoff is that of Columbus Police Officers Debra Paxton and Christopher Tussing regarding an individual in a yellow shirt that Officer Paxton observed in the garage, and both officers observed running away from the property. Officer Paxton was the only witness to testify that appellant was the person she saw inside the garage. Appellant asserts that her testimony is "not credible, and wholly unsupported by the remaining evidence." (Appellant's brief, at 7.) Appellant suggests that Officer Paxton's testimony is unreliable because she "understandably holds strong feelings of resentment against [appellant]" due to an assault by appellant on Officer Paxton for which appellant was convicted two years prior to this incident. (Id. at 4.)
 {¶ 12} Appellant, however, ignores the remaining circumstantial evidence provided by the testimony of not only Officer Paxton, but also Officer Tussing, which the trier of fact could rely upon in finding appellant guilty of breaking and entering at the Mithoff property. Appellee presented evidence via the testimony of two Columbus Police Officers, Officer Paxton and Officer Tussing, Columbus Police Detective Gary Scott, and the property owner and victim in this case, Harold Davis.
 {¶ 13} Officer Paxton testified she received a call at approximately 3:00 a.m., on December 10, 2004, regarding an incident in an unattached garage at 74 East Mithoff Street. Officer Paxton responded to the area in her cruiser with the lights off in an attempt to surprise the offenders. As she drove down the alley, Officer Paxton observed "two individuals inside the garage * * * exiting from the inside of the garage out the door into the yard which is southbound." (Tr. at 21.) Officer Paxton described that one of the individuals was wearing dark clothing, and the other was wearing a yellow shirt. At this time, Officer Paxton aired on her radio that two individuals were running southbound. Rather than pursue the individuals, Officer Paxton went to the van that had its driver's side door open and was parked in the alley adjacent to the Mithoff property at issue. Officer Paxton looked in the vehicle and removed the ignition keys. At this time, Officer Paxton heard an officer air that he had an individual that came around the front of the house at 74 East Mithoff, and was running westbound. Officer Paxton headed westbound and met up with Officer Tussing as he was handcuffing appellant on the ground. Appellant was wearing a yellow shirt. Officer Paxton testified that she lost sight of the individual running out of the garage for about five seconds, and that about another twenty seconds passed before she saw appellant being handcuffed. Officer Paxton identified appellant as the individual she observed in, and leaving, the garage. Thereafter, Officer Paxton ran a check on the license plates on the van and found that the van was registered to appellant. Recognizing the name, Officer Paxton returned to appellant, who at this time was seated in a police cruiser, and determined that appellant was the individual that assaulted her in a previous case.
 {¶ 14} According to Officer Tussing, he was approaching the front of 74 East Mithoff when he heard an officer air there were two individuals running south from the house through the yards. Officer Tussing observed two males running towards him, one headed west, and one headed east. Officer Tussing followed the man heading west wearing a "yellow jacket of some sort or another," and apprehended him. (Id. at 39.) The man that Officer Tussing apprehended was appellant. Officer Tussing first observed appellant "running from the side of the house * * * toward the street of Mithoff." (Id. at 40.) Officer Tussing stated that "about the time [Officer Paxton] quit airing on the radio [that two individuals were running southbound], they were in the front yard heading toward Mithoff Street." (Id. at 50.) Officer Tussing testified that he never lost sight of appellant from the time he was running through the yards until Officer Tussing made the apprehension.
 {¶ 15} The other individual that Officer Tussing observed run eastbound was later found hiding under an RV in front of the property. This individual was later identified as Haycock. Haycock testified he was involved in the breaking and entering, but that he committed the act with a man known as "Steve," not appellant. (Id. at 77.) According to Haycock, he called appellant for a ride because all the things found in the garage would not fit in Steve's car. Haycock testified that he had no idea what happened to Steve after they began running from the scene. Haycock also explained that he did not want appellant to get in trouble for something he did not do, and admitted that he did not provide the police with this information prior to trial.
 {¶ 16} Appellant testified on his own behalf that he was not involved in the breaking and entering, he did not enter or exit the subject garage, and he was never on the property of 74 East Mithoff that night. According to appellant, he was in the area merely because Haycock called him for a ride, and he had no knowledge that any criminal activity was occurring. Appellant testified that when he arrived at the address where Haycock told him to be, Haycock returned bolt cutters that Steve had borrowed a few days prior. Appellant got out of his van to look for Steve and did see Steve about "five houses down." (Id. at 98.) Appellant then heard tires squealing and "felt awkward," so he began to run. (Id. at 110.) After slipping in some leaves, he was apprehended by officers. When confronted with the testimony of Officers Paxton and Tussing, appellant suggested that they were mistaken.
 {¶ 17} Detective Scott testified that there was no attempt to do fingerprints because officers had actually witnessed the two apprehended individuals in, and running from, the garage.
 {¶ 18} Although appellant attacks the credibility of the witnesses, particularly that of Officers Paxton and Tussing, an appellate court does not weigh credibility when considering an insufficiency of the evidence argument. State v. Coit, Franklin App. No. 02AP-475, 2002-Ohio-7356, citing Ruta v.Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68-69. We find the testimony and the evidence, when viewed in a light most favorable to the prosecution, as we are required to do, could convince the average mind of appellant's guilt beyond a reasonable doubt. Consequently, we find the evidence is adequate to sustain a verdict.
 {¶ 19} Accordingly, we overrule appellant's second assignment of error.
 {¶ 20} In his first assignment of error, appellant argues that his conviction for breaking and entering is against the manifest weight of the evidence. We disagree.
 {¶ 21} "The weight of the evidence concerns the inclination of the greater amount of credible evidence offered in a trial to support one side of the issue rather than the other." State v.Brindley, Franklin App. No. 01AP-926, 2002-Ohio-2425, at ¶ 35, citation omitted. In order for a court of appeals to reverse the judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court must disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id., quotingState v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 22} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v.DeHass (1967), 10 Ohio St.2d 230. The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimony is credible.State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v. Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. The trier of fact is free to believe or disbelieve all or any of the testimony. State v. Jackson (Mar. 19, 2002), Franklin App. No. 01AP-973; State v. Sheppard (Oct. 12, 2001), Hamilton App. No. C-000553. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 22; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 17.
 {¶ 23} We cannot say that the trial court's finding was against the manifest weight of the evidence. Appellant asserts the trial court, as trier of fact, clearly lost its way in reaching a verdict because of the unreliability of the officers' testimony. Appellant contends unreliability is demonstrated by the officers' failure to annotate in the U-10 police report that any individuals were observed exiting the unattached garage and entering the home's yard, despite Officer Paxton's testimony of the same. Officer Tussing created the U-10 police report for this incident, and admitted that there is no mention of this in the report. When questioned on this issue during cross-examination, Officer Tussing stated, "there were four officers, detectives involved, and I did not speak with each officer and the detective before I wrote the U-10." (Tr. at 48.) When asked on cross-examination whether Officer Paxton told Officer Tussing that she observed two individuals in the garage, Officer Tussing stated, "I can't state that I'd actually spoken with her that night about whether she seen anybody in the garage or not." (Id. at 46.) Officer Tussing did explain, however, that Officer Paxton did air on the radio that she had two people running southbound from the garage. (Id. at 46, 50.) The omission from the U-10, while it may be a factor in assessing a witness's credibility, does not require Officer Paxton's testimony to be summarily disbelieved, particularly in light of Officer Tussing's testimony that he may not have spoken with her fully prior to writing the U-10, and he did recall her airing that the individuals were running from the garage.
 {¶ 24} Further, the evidence does not support appellant's suggestion, that Officer Paxton harbored bias or resentment against appellant because of his earlier assault on her. Officer Paxton testified she did not know that the apprehended individual was appellant until after he was arrested, she identified him as the man running out of the garage, and she discovered that the van was registered to him.
 {¶ 25} Similarly, the trier of fact was free to reject appellant's contention that Steve Jenkins, rather than appellant, was Haycock's co-accomplice. While Haycock testified that he was with Jenkins when committing the breaking and entering, there were many aspects of Haycock's testimony that render it suspect. For example, Haycock stated that he committed the crime with a man named Steve, but that he did not know Steve's last name. Haycock explained that they planned the incident "earlier that day when [he] met up with Steve on the south side." (Tr. at 78.) Appellant was wearing a yellow shirt when he was arrested, but Haycock did not recall whether appellant and/or Jenkins was wearing a yellow shirt that night.
 {¶ 26} When asked on cross-examination if he knew appellant, Haycock testified that he knew appellant "a little," and he knew appellant's family "just a little bit." (Tr. at 85.) Yet, Haycock called appellant at 2:30 a.m., to pick him up and put stolen items in appellant's vehicle. Also, Haycock indicated that though his mom dropped him off at the courthouse to testify, he'd probably get a ride home with appellant's "mom or somebody." (Id.)
 {¶ 27} Regarding the bolt cutters, appellant testified that Haycock gave him the bolt cutters that night because Jenkins had borrowed them a few days prior, and Haycock was returning them for Jenkins. During Haycock's direct examination, the following exchange took place:
[Appellant's counsel]: What happened when he arrived at the scene?
[Haycock]: Right when he arrived at the scene, I seen him come down the alley of Mithoff and I stopped him right by the end, I think it was City Park, maybe, probably, I don't remember. But right after that he got out of the van. I walked over to the side of the garage. I grabbed the bolt cutters and I told him to put them in his van.
[Appellant's counsel]: How did he respond when you did that?
[Haycock]: He just looked at me a little weird, but I just handed them to him, told him to put them in the van.
(Id. at 79-80.)
 {¶ 28} Finally, though this incident happened over a year prior to trial, Haycock never went to the police and said they had arrested the wrong man.
 {¶ 29} As previously discussed, the basis for appellant's manifest weight argument is the witnesses' conflicting testimony, and the credibility of the witnesses. A conviction, however, is "not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Moore,
Montgomery App. No. 20005, 2004-Ohio-3398, quoting State v.Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757. The weight to be given to the evidence, and the credibility of the witnesses are issues primarily for the trier of fact. DeHass, supra. Further, the trier of fact is free to believe all, or any of the testimony. Jackson, supra. Thus, the fact that the trier of fact may or may not have found all of a particular witness' testimony to be credible is not a basis for reversal on manifest weight grounds. After carefully reviewing the trial court's record in its entirety, we conclude that the trier of fact did not lose its way in resolving credibility determinations, nor did the conviction create a manifest miscarriage of justice. While appellant denies that he was involved in the breaking and entering at 74 East Mithoff, the trier of fact was in the best position to determine the credibility of the testimony presented and we decline to substitute our judgment for that of the trier of fact. As we explained above, the evidence of appellant's involvement is both credible and persuasive. Consequently, we cannot conclude that this is the exceptional case requiring reversal on manifest weight grounds.
 {¶ 30} Accordingly, we overrule appellant's first assignment of error.
 {¶ 31} For the foregoing reasons, appellant's two assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
Sadler and French, JJ., concur.